IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Osama Alkasabi, | § | |
| | § | BANKRUPTCY CASE 07-36856-H2-7 |
| Appellant, | § | CHAPTER 7 CASE |
| | § | |
| VS. | § | Adversary Proceedings |
| | § | Nos. 09-1166; 09-3291 |
| Rampart Acquisition Corporation | § | |
| L.L.C.; Trustee Lowell Cage; | § | |
| 1102 Taft, LC; Joseph Hill; and | § | CIVIL ACTION: H-09-4116 |
| William Lee Ball, | § | |
| | § | |
| Appellees. | § | |

## OPINION AND ORDER

The above referenced cause is an appeal of two orders issued by Bankruptcy Judge Wesley W. Steen in *In re Butan Valley, N.V.*, Cause No. 07-36856-H2-7:  (1) order issued on December 14, 2009, pursuant to Defendants' Joint Motion for Sanctions, permanently enjoining Osama Alkasabi from future litigation[1] "against Rampart Acquisition Corporation, LLC, Lowell T. Cage, Chapter 7 Trustee, 1102 Taft, Inc., Joseph Hill, William Lee Ball, Societe Generale, ABN AMRO Bank, N.V., Maxicorp Properties. Inc., any of their respective affiliates, officers, directors, shareholders, principals, attorneys, employees and other representatives, and against any other person or entity" arising out of the above

---

[1] Filed in Bankruptcy Court Docket of Case No. 07-36856-H2-7 as instrument #310; copy filed in this action as #24, Exhibit 1. The order expressly states that the injunction does not apply to appeals.

-1-

referenced bankruptcy; and (2) order of civil contempt[2] against Alkasabi, issued the same day, based on Alkasabi's failure to pay to Appellee Rampart Acquisition Corporation LLC ("Rampart") court-ordered monetary sanctions. The first appealed order has been labeled by Rampart as the "Final Sanctions Order," the second, the "Civil Contempt Order."

Appellant Osama Alkasabi, proceeding *pro se*,[3] identifies himself as "100% Equity Holder, Creditor, and a Party of Interest of [Debtor] Butan Valley, N.V., a Netherlands Antilles Corporation." Statement of Interested Parties, instrument #15 at page ii.

## Appellant's Issues on Appeal

While Alkasabi's brief is rambling, disjointed, and muddled, he identifies the following somewhat redundant issues on appeal, rephrased by the Court in an attempt to clarify them:

1. Whether the Bankruptcy Court exceeded its jurisdiction and authority in enjoining Alkasabi from suing the entities named above when those entities are

---

[2] Instrument #311 in 07-36856; in H-09-4116 #24-2.

[3] According to the Bankruptcy Judge's Final Order Awarding Costs and Sanctions and Barring Osama Alkasabi from Filing Excessive Pleadings (#150 on the Bankruptcy Court Docket; #24 Ex. 3 in this case), Alkasabi "claims to have both a JD and an LLM" though appearing *pro se*. In a Memorandum Opinion Regarding Dismissal of Complaint (#24, Ex. 4 here), the bankruptcy judge added that Alkasabi "does not allege that he was ever admitted to the bar. He has participated in this case representing himself, as the alleged equity owner and as an alleged creditor."

violating federal and state law?

2.   Whether the Bankruptcy Court abused its discretion and showed bias toward Alkasabi in enjoining him?

3.   Whether the Bankruptcy Court's orders are void because the Bankruptcy Court does not have jurisdiction to enter them?

4.   Whether the Bankruptcy Court's orders violated Alkasabi's due process and equal protection rights under the United States and Texas Constitutions when it enjoined him from pursuing his claims?

5.   Whether the Bankruptcy Court's bias prevented it from acting neutrally and deciding the issue on the merits?

6.   Whether the Bankruptcy Court Committed reversible error by issuing orders not supported by facts, evidence and laws?

### Appellees' Brief

Rampart has filed a brief (#24), which has been adopted by Lowell T. Cage (#25), Chapter 7 Trustee for the bankruptcy estate of Debtor Butan Valley, N.V.   Because Alkasabi's brief is incoherent and unintelligible, the Court has relied on the record and on Rampart's brief where it is supported by that record to summarize facts underlying this appeal.

Rampart has reduced to two and restated the issues on appeal: (1) Did the Bankruptcy Court commit reversible order when it

entered the Final Sanctions Order?; and (2) Did the Bankruptcy Court commit reversible error when it entered the Civil Contempt Order?

Rampart's Statement of the Case asserts that the Final Sanctions Order and the Civil Contempt Order, the latter of which Rampart states is an extension of a previous Monetary Sanctions Order[4] which Alkasabi never paid, were the necessary result of Alkasabi's abusive, vexatious, multiplicitous litigation history here. Rampart complains that this litigation involves a bankruptcy proceeding, two adversary proceedings, sixteen meritless appeals to the District Court, and ten appeals to the Fifth Circuit, all of which have been dismissed on procedural grounds such as failure to file timely a brief. #24, Exs. 5 and 6.

Rampart's Statement of Facts offers the following history. Alkasabi, on behalf of Butan Valley, N.V., filed the bankruptcy case of October 1, 2007.[5] Before June 15, 2009, the bankruptcy

---

[4] #214 in the Bankruptcy Case Docket; #24, Ex. 3 in this case.

[5] This Court notes that the Bankruptcy Court's Memorandum Opinion Regarding Dismissal of Complaint (#24, Ex. 4 here) states,

> Butan Valley, N.V. ("Debtor") filed a voluntary petition commencing bankruptcy case number 07-36856 under chapter 7 of the Bankruptcy Code on October 1, 2007. Mr. Richard Fuqua, an attorney, filed the petition. He virtually disappeared from the case almost immediately, and Mr. Osama Alkasabi ("Mr. Alkasabi," the alleged owner of the equity in the debtor and an alleged creditor) has filed the prolonged, vexatious, multiplicitous litigation that has plagued the administration of the estate."

estate was comprised of the following real property (collectively, the "Properties"): (1) a 75% undivided interest in a tract of real property consisting of approximately 25 acres of undeveloped land located on Highway 6 in Harris County, Texas; and (2) A 100% undivided interest in a tract of real property of approximately 180 gross acres (162 usable acres) of undeveloped land located on FM 1464 in Fort Bend County, Texas.   On December 13, 2007 Rampart filed a proof of claim for $10,154,582.46 (the "Rampart claim") against the Debtor's estate.   Rampart explains,

> The Properties were previously encumbered by a judgment lien abstracted from a Corrected Final Judgment issued in 2001 (the "Judgment"), which was affirmed by the Fifth Circuit Court of Appeals in 2002.   Rampart purchased the Judgment from Societe General and ABN AMRO Bank, N.V. prior to the Bankruptcy Petition Date.   Before Rampart could exercise its rights in and to the Properties in order satisfy all or a portion of the Judgment indebtedness, Alkasabi, on behalf of the Debtor, initiated the Bankruptcy Case, effectively staying Rampart's efforts to satisfy all or a portion of the Judgment indebtedness.[6]

#24 at 9, n.1.

Alkasabi objected to Rampart's proof of claim, but his objection was overruled, denied, and dismissed with prejudice by an order dated February 6, 2009.[7]   Rampart then obtained a lifting of the automatic stay on March 9, 2009 to exercise its rights in and

---

[6]   In essence Rampart contends that Alkasabi filed the Bankruptcy Case to preclude Rampart from executing on the Debtor's Properties to satisfy the Judgment.

[7]   Bankruptcy Case Docket #171.

to the Properties to satisfy all or a portion of the judgment of indebtedness.[8]

On February 23, 2009 the Trustee filed a Motion for Order Authorizing Sale Free and Clear of All Liens, Claims and Encumbrances of Debtor's Real Estate Subject to Higher and Better Offers to sell the Properties to the highest bidder. The Bankruptcy Court approved the Trustee's motion, and the Trustee sold the Properties to the highest bidder, Rampart, for a credit bid of 5,500,000.00 Euros and $310,000.00 in cash. The sale closing/funding was completed on June 15, 2009.

Alkasabi appealed nearly every order or ruling by the Bankruptcy Court in Debtor's bankruptcy proceeding to the District Court and then to the Fifth Circuit. Finally the Bankruptcy Court held Alkasabi to be a vexatious and multiplicitous litigant and issued the Monetary Sanctions Order (#24, Ex. 4) against him and ordered him to pay Rampart's, the Bank's and the Trustee's attorney's fees.[9] #24, Exs. 2-3. Nevertheless, Alkasabi did not pay and continued to file appeals.

On January 11, 2008 Alkasabi, on his own behalf, filed a petition in the 157th Judicial District Court, Harris County, Texas,

---

[8] Bankruptcy Case Docket #201.

[9] The order mandated that Alkasabi pay to Rampart $143,000.00, the Trustee, $28,000.00, and to Societe Generale and ABN AMRO, $32,000.00, as "the costs and expenses associated with responding to the scurrilous, abusive, vexatious, and multiplicitous litigation." #24, Ex. 3.

Cause No. 2008-02155, asserting the same claim that the Debtor listed on Schedule B-21 in the Bankruptcy Case, i.e., that Societe Generale f/k/a La Banque Societe Generale and ABN AMRO Bank, N.V. (collectively, the "Banks") breached an oral contract to sell the Judgment owned by the Banks to Alkasabi.  Alkasabi also named Rampart as a defendant because Rampart purchased the Judgment from the Banks; Alkasabi claimed there, and in his brief in this appeal, that the Judgment should have been transferred to Alkasabi because he had an agreement to purchase the Judgment from La Banque Societe Generale and La Banque Nueflize Schlumberger at the end of 2002. Rampart maintains that the First Adversary Proceeding was another attempt by Alkasabi to prevent Rampart from executing on the Debtor's Properties to satisfy the Judgment it had obtained in 2001.  On February 8, 2008 Rampart removed this state court action to the Bankruptcy Court, where it was docketed as Adversary Proceeding No. 08-03039.  During its pendency, Alkasabi appealed nearly every order or ruling in the First Adversary Proceeding.  On October 2, 2009 Rampart filed a motion for summary judgment in this First Adversary Proceeding, and it was granted on February 2, 2009. 08-03039, #108.  On February 4, 2009 the Bankruptcy Court entered its reasons and conclusions for granting the summary judgment. *Id.*, #110.  Rampart obtained relief from the automatic stay on March 9, 2009 to exercise its rights in the properties to satisfy all or part of the Judgment indebtedness.

After the sale of the Properties in the estate to Rampart was completed on June 15, 2009, on July 2, 2009 Rampart filed a motion to dismiss under 11 U.S.C. § 363(m) another appeal by Alkasabi,, docketed in the district court as in Civil Action No. 2009-01166, on the grounds that the case was moot because of the sale. Alkasabi's response argued that the sale of the Properties should be set aside under 11 U.S.C. § 363(n) because Rampart and the Trustee had engaged in collusive bid-rigging.   On August 4, 2009 the district court entered a memorandum and order granting Rampart's motion, and Alkasabi filed an appeal docketed under Fifth Circuit No. 20602.

During this time Alkasabi filed his Second Adversary Proceeding against Rampart, the Trustee and other parties in Civil Action No. 09-03291.   He again claimed that the sale of the Properties should be set aside because of collusive bid rigging by Rampart, the Trustee, and the other defendants.   On July 31, 2009 the Trustee moved to dismiss the Second Adversary Proceeding for failure to state a claim.   The Bankruptcy Court granted the Trustee's motion on September 3, 2009 and entered an opinion and final judgment dismissing the proceeding.   09-03291, #19 and 20. Alkasabi appealed that order, docketed under Civil Action 2009-03003 in the District Court.   The District Court dismissed the action on December 23, 2009.   Again Alkasabi appealed to the Fifth Circuit, No. 2010-20073.   That appeal was ultimately dismissed

because Alkasabi did not file a brief.

On December 14, 2009 Bankruptcy Judge Steen signed the two orders on appeal here:   the Final Sanctions Order permanently enjoining Alkasabi from future litigation arising out of the Bankruptcy Case against specified parties involved in that proceeding and the Civil Contempt Order based on Alkasabi's failure to pay  what was ordered under the earlier Monetary Sanctions Order.

### Rampart's Arguments

Rampart insists that sanctions were clearly warranted against Alkasabi for his numerous, meritless, convoluted, premature and scattershot appeals to the District Court and the Fifth Circuit. #24, Exs. 5-6 (lists of Alkasabi's appeals downloaded from Pacer). The Final Sanctions Order was issued after nearly two years of vexatious litigation. *See, e.g., Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007)[10], in which the Tenth Circuit reviewed a

---

[10] The Tenth Circuit wrote,

Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions in appropriate circumstances. . . . Specifically, injunctions restricting further filings are appropriate where the litigant's lengthy and abusive history is set forth; the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and the litigant received notice and an opportunity to oppose the court's order before it was implemented.  [citations omitted]

*Id.* at 1077.

district court's order barring a vexatious *pro se* litigant from filing any more lawsuits in the Western District of Oklahoma without first obtaining permission from the Chief Judge.  The Tenth Circuit altered the order to limit the injunction to plaintiff's future *pro se* filings and appeals arising out of the subject matter of the plaintiff's three cases before that appellate court and the parties involved in those cases, but otherwise affirmed the district court's injunction against future filings.  *Id.* at 1077.

Pointing to Alkasabi's bankruptcy proceeding and the two adversary proceedings, sixteen appeals to the district court, and ten appeals to the appellate court arising out of that bankruptcy, Rampart urges the Court to find that Alkasabi's conduct far outweighs that of the plaintiff in *Andrews*.  Rampart maintains that the Final Sanctions Order is clearly warranted, as in *Andrews*.  The sanctions imposed on Alkasabi are narrowly tailored to serve the ends of justice since his long, abusive litigation pattern has demonstrated that he has no regard for the federal court system.  Monetary sanctions appear ineffective since he has already disobeyed court orders to pay such.

Furthermore the two orders should be upheld on procedural grounds, argues Rampart.  Rampart points out that on December 24, 2009 Alkasabi filed his notice of appeal in this action, with copies of the Final Sanctions Order and the Civil Contempt Order attached.  That same day he filed a similar notice of appeal

docketed in Civil Action No. 09-04118.  On April 13, 2010, Judge Kenneth M. Hoyt dismissed 09-04118 (#12, attached here as #24, Ex. 15) because Alkasabi failed to prosecute that appeal.  Thus this appeal should be dismissed on *res judicata* grounds because a "dismissal for failure to prosecute bars any further adjudication because it operates as an adjudication on the merits." *Nielsen v. U.S.*, 976 F.2d 951, 957 (5th Cir. 1995).  For the same reason this court should affirm the Final Sanctions Order and the Civil Contempt Order.

Rampart maintains that the Bankruptcy Court did not commit reversible error when it entered the Civil Contempt Order. Alkasabi did not pay the monetary sanctions ordered in the Monetary Sanctions Order entered on March 15, 2009, and he continued to file numerous groundless appeals which caused Rampart to incur even more attorneys' fees by responding to them.  #24, Exs. 2, 5, and 6. Given the extreme abuse of the federal judicial system which continued after that order, the Court was well within its discretion to enter the Civil Contempt Order.

### This Court's Jurisdiction

Failure to file a timely **notice** of appeal deprives a district court of jurisdiction over a bankruptcy appeal. *In re Bayhi*, 528 F.3d 393, 401 (5th Cir. 2008).  The Notice of Appeal was timely filed by Appellant on December 24, 2009, within ten days of issuance of the order of civil contempt and the permanent

injunction on December 14, 2009, as required by Federal Rule of Bankruptcy Procedure 8002(a).

A district court has jurisdiction over a bankruptcy appeal pursuant to 28 U.S.C. § 158(a), which states that "district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders and decrees . . . of bankruptcy judges . . . ." A "final" order in a bankruptcy court is any order that "ends a discrete judicial unit in the larger case." *In re Moody*, 817 F.2d 365, 367-68 (5th Cir. 1987); *In re Sanburg Financial Corp.*, ___ B.R. ___, Civ. A. No. C-10-280, 2011 WL 649486, *1 (S.D. Tex. Feb. 11, 2011). The bankruptcy court permanently enjoined Alkasabi from filing future litigation against specified entities involved in the bankruptcy below with regard to matters arising out of that bankruptcy, ending a discrete judicial unit in the bankruptcy proceeding. It also held him in civil contempt for a failure to pay court-ordered sanctions. A civil contempt order is final if two actions occur: (1) a finding of contempt is issued and (2) an appropriate sanction is imposed. *United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re the Matter of United States Abatement Corp.)*, 39 F.3d 563, 567 (5th Cir. 1994)(and cases cited therein). Both conditions were met by Judge Steen's order of civil contempt. #24, Ex. 2. Accordingly this Court concludes that it has subject matter jurisdiction over

this appeal.[11]

## Alleged Judicial Bias

Alkasabi argues that Judge Steen should have disqualified himself because he had a personal bias or prejudice against Alkasabi.   He specifically contends that (1) Judge Steen struck Alkasabi's affidavit objecting to Rampart's proof of claim, even though Alkasabi was present at the hearing, but allowed four affidavits from the Banks even though they were not present at the hearing; (2) Judge Steen allowed the hiring of a Trust Firm and a Real Estate broker even though they are both partners of a Real Estate Company called 1102 Taft, LC; (3) Judge Steen allowed Appellees not to disclose any documents under Rule 26 mandatory disclosure, yet allowed Rampart to introduce nineteen pieces of evidence at the hearing on its proof of claim; and (4) Judge Steen issued a summary judgment without allowing discovery of ABN Amro Bank, N.V. and Societe General even though Trustee Joseph Hill received a Loan from one of the banks and is currently a partner in 1102 Taft LC with real estate broker William Lee Ball.

The obligation of a federal judge to recuse himself because of

---

[11]The Court further observes that bankruptcy courts "maintain jurisdiction to interpret and enforce their own orders to ensure their proper execution" after bankruptcy cases are closed or dismissed.   *In re National Benevolent Ass'n of the Christian Church*, No. 08-50677, 2009 WL 1649485, *4 (5th Cir. 2009), *citing In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005)("Bankruptcy Courts maintain jurisdiction to enforce their own orders.").

personal bias or prejudice concerning a party is governed by 28 U.S.C. § 455.  Section 455 in relevant part states,

> (a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

Case law a provides guidelines for interpreting this statute. *Andrade v. Chojnacki*, 338 F.3d 448, 454-55 (5th Cir. 2003).  First, the standard for bias is no longer subjective, but objective, referencing the "well-informed, thoughtful and objective observer." *Id.* at 455, *citing Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991).  Furthermore, "the review should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents."  *Id., citing Sao Paulo State of Federative Rep. of Brazil v. American Tobacco Co.*, 535 U.S. 229, 232-33 (2002), and *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995).

The general rule is that one seeking to disqualify a judge must do so "at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir, 1998), *quoting Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir,

1994).  "Although a disqualification challenge raised for the first time on appeal is not *per se* untimely, the timeliness requirement of section 455 obligates a party to raise the disqualification issue 'at a reasonable time in the litigation.'" *Hollywood Fantasy Corp. v. Zsa Zsa Gabor*, 151 F.3d 203 (5th Cir. 1998), *quoting United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989).  *See Delesdernier v. Porterie*, 666 F.2d 116, 122-23 (5th Cir. 1982)(declining to consider a disqualification argument made under section 455 (a) because plaintiff raised it for the first time on appeal).  The most egregious delay--the closest thing to *per se* untimeliness--occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal." *Sanford*, 157 F.3d at 988-89.  *See also Andrade*, 338 F.3d at 454 ("Requests for recusal raised for the first time on appeal are generally rejected as untimely.").  The Fifth Circuit has "rejected recusals on appeal when the challenger waited to see if he liked the outcome before springing the recusal issue." *Sanford,* 157 F.3d at 989, *citing U.S. v. York*, 888 F.2d 1050, 1056 (5th Cir. 1989), and *Delesdernier*, 666 F.2d at 122-23. It has flatly denied other efforts to disqualify a judge on appeal as too late under the circumstances.  *Id., citing Gabor*, 151 F.3d at 216, and *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1096 n.3 (5th Cir. 1988).

-15-

Appellant was fully informed by Judge Steen's Memorandum Opinion of September 3, 2009 (#24, Ex. 4) discussing Alkasabi's abusive, frequent, and vexatious appeals, yet waited until now to raise bias as an issue.  From the designated record before this Court it appears that Appellant's "challenge [that Judge Steen is biased against him] suffers from both maladies [identified in *Sanford*]; he not only waited, but also raises the issue for the first time on appeal." *Sanford*, 157 F.3d at 989.

Moreover the reasons Alkasabi gives to show Judge Steen's bias relate to his actions in his capacity as the judge overseeing the bankruptcy proceeding.  "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United* States, 510 U.S. 540, 555 (1994); *Andrade*, 338 F.3d at 455.  "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.  "Almost invariably, these are proper grounds for appeal, not for recusal." *Id.*

Accordingly, because Alkasabi failed to exert reasonable diligence or show good cause for not raising the bias charge timely and because he fails to allege facts that would state a claim of bias and be grounds for recusal or disqualification, the Court

overrules Appellant's bias objection and examines Appellant's substantive challenges to the two orders on the merits.

## Standard of Review on Appeal

It is well established that the standard of review applicable to bankruptcy appeals in the Fifth Circuit is the same as that standard applied by the Fifth Circuit to district court rulings. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989). The bankruptcy court's finding of facts are reviewed for clear error, giving due regard to the bankruptcy judge's opportunity to evaluate the credibility of witnesses. *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 369 (5th Cir. 2005). A finding is clearly erroneous when although there is evidence to support it, the reviewing court based on the entire record has a definite and firm conviction that a mistake has been made. *U.S. v. U.S. Gypsum,* 333 U.S. 364, 395 (1948); *Otto Candies, LLC v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 548 (5th Cir. 2003). Because factual findings cannot be set aside unless clearly erroneous, an appellate court may not find facts or view the evidence differently as a matter of choice or reweigh the evidence on appeal simply because it disagrees with the choices made by a bankruptcy court. *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 77 n.5 (S.D. Tex. 2000). If there are two permissible views of the evidence, the fact finder's choice of one cannot be clearly erroneous. *Anderson v. Bessener City*, 470 U.S. 564, 574 (1985). The appellant bears

the burden of showing that the bankruptcy judge's findings are clearly erroneous. *Musslewhite*, 270 B.R. 72, 77 (S.D. Tex. 2000), *citing Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993); *In re Drehsen*, 190 B.R. 441, 442 (M.D. Fla. 1985).

The bankruptcy court's conclusions of law and its mixed conclusions of law and fact are reviewed *de novo*. *Acosta*, 406 F.3d at 369; *In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

Furthermore imposition of sanctions by the bankruptcy court is a matter of discretion and must be reviewed under an abuse of discretion standard. *Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir.), *cert. denied*, 510 U.S. 991 (1993); *Matter of Sadkin*, 36 F.3d 473, 474 (5th Cir. 1994); *Musslewhite*, 270 B.R. at 77. The standard of review of a bankruptcy court's civil contempt order is also abuse of discretion. *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004). An appellate court also reviews an award of attorneys' fees under an abuse of discretion standard. *Musslewhite*, 270 B.R. at 78, *citing In re Anderson*, 936 F.2d 199, 203 (5th Cir. 1991).

### Bankruptcy Court's Civil Contempt Power

The Fifth Circuit has held that a bankruptcy court has the power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings pursuant to 11

U.S.C. § 105.[12]  *Placid Refining Co. v. Terrebone Fuel and Lube, Inc. (In the Matter of Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997)("[W]e conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code."); *Musslewhite*, 270 B.R. at 78.  Similarly the All Writs Act, 28 U.S.C. § 1651(a) allows "all courts established by Act of Congress" to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law" and gives bankruptcy courts the power to regulate vexatious litigation.  *In re Guidry*, 354 B.R. 824, 828 & n.1 (Bkrtcy., S.D.

---

[12] Section 105 provides in pertinent part,

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Bankruptcy courts lack the power to hold persons in criminal contempt, however.  *Terrebonne*, 108 F.3d at 613 n.3, *citing Matter of Hipp, Inc.*, 895 F.2d 1503, 1509 (5th Cir. 1990).

Contempt proceedings are either civil or criminal, depending upon their main purpose:  if the purpose is to punish the party whose conduct is at issue or to vindicate the authority of the court, the order is criminal, while if the purpose is to coerce compliance with a court order or to compensate another party for the contemnor's violation, the order is classified a civil.  *Id.* at 612, *citing Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990).  Here the purpose of the order was to coerce compliance with the Monetary Sanctions Order and to compensate Rampart and others for costs and expenses in having to respond to Appellant's purportedly frivolous and harassing litigation conduct.

Tex. 2006); *Lakusta v. Evans (In re Lakusta)*, No. C-06-6105, Adv. Case No. 03-3549 TC, 2007 WL 2255230, *3 (N.D. Cal. Aug. 3, 2007).

"'A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Ingalls v. Bradley (In re Bradley)*, 371 B.R. 782, 788 (Bkrtcy. W.D. Tex. 2007)(*quoting Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)), *aff'd*, 588 F.3d 254 (5th Cir. 2009). The purpose of damages awarded as a sanction for violating a court order is to "'[reimburse] the injured party for the losses and expense incurred because of his adversary's noncompliance.'" *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976), quoted for that proposition in *Musslewhite*, 270 B.R. at 79. The party seeking an order of civil contempt hearing must show by clear and convincing evidence that (1) a court order is in effect; (2) the order required certain conduct by the respondent; and (3) the respondent did not comply with the court order. *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009); *Musslewhite*, 270 B.R. at 79, *citing American Airlines, Inc. v. Allied Pilots Assoc.*, 228 F.3d 574, 581 (5th Cir. 2000). Clear and convincing evidence in a civil contempt proceeding is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact

finder to come to a clear conviction, without hesitancy of the truth of the precise facts' of the case." *Travelhost*, 68 F.3d at 961.   The only issue in a civil contempt hearing is the respondent's compliance with the court's order; willful intent is not relevant.   *American Airlines*, 228 F.3d at 581 ("the contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order").   If the movant establishes a failure to comply with a court order, the respondent then bears the burden of showing mitigating circumstances or that the respondent substantially complied with the court's order or made every reasonable effort to comply, such that the court might withhold exercising its contempt power.   *Faulkner v. Kornman (In re The Heritage Organization, LLC)*, Bankruptcy No. 04-35574-BJH-11, 2010 WL 3516174, *2 (Bkrtcy. N.D. Tex. Sept. 3, 2010), *citing FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995); *In re Rodriguez*, Civ. A. No. SA-06-CA-323-XR, 2007 WL 593582, *7 (W.D. Tex. Feb. 20, 2007).   As a sanction for civil contempt he court may order payment of actual damages, including attorney's fees, from one party to another.   *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 399 (5th Cir. 1987)("sanctions for civil contempt are meant to be wholly remedial and serve to benefit the party who has suffered injury or loss at the hands of the contemnor"); *Musslewhite*, 270 B.R. at 78 (affirming bankruptcy court's award of attorney's fees to a party as a civil contempt sanction).

-21-

Here there is clear and convincing evidence that the Monetary Sanctions Order was in effect, that it required Alkasabi to pay fees and expenses to specified parties caused by Alkasabi's vexatious and harassing litigation, and he failed and still fails to comply with it.   Instead he continues to argue that the Court lacked the power to issue it, as well as the Final Sanctions Order and the Civil Contempt Order.

### Bankruptcy Court's Power to Enjoin

"Federal courts have the power to enjoin plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008), *citing Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986).   *See also In re Kristan*, 395 B.R. 500, 511 (1st Cir. 2008); *In re Reilly*, 112 B.R. 1014, 1017 (B.A.P. 9th Cir. 1990).   They have this power to regulate vexatious litigation  pursuant to 11 U.S.C. § 105(a) and the All Writ's act, 28 U.S.C. § 1651(a).   *In re Kristan*, 395 B.R. at 511.   Such an injunction can issue if (1) the litigant receives notice and a chance to be heard before the order is entered; (2) there is an adequate record of the cases or abusive activities undertaken by the litigant; (3) there is a substantive finding that the claims brought were frivolous or were brought with the intent to harass the parties; and (4) the scope of the injunction is narrowly prescribed to fit the abuse that the court seeks to

prevent. *Id.*

"'[T]he traditional standards for injunctive relief, *i.e.*, irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant.'" *Baum,* 513 F.3d at 190, *quoting Martin-Trigona v. Lavien (In re Martin-Trigona)*, 737 F.2d 1254, 1262 (2d Cir. 1984). The court should examine all relevant circumstances, including "(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.* at 189*, citing Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004). Nevertheless "an injunction against future filings must be tailored to protect the courts and innocent parties, while protecting the legitimate rights of litigants." *Id.* at 190*, citing Farguson*, 808 F.2d at 359-60. The Fifth Circuit has found that it can be appropriate to limit an injunction to enjoin a party who harasses his opponents from filing any additional claims against those defendants in the action and related parties, and may even permit broader injunctions prohibiting filings in any federal court where a litigant engages in a widespread practice of harassment of different people. *Baum*, 513 F.3d at 190, *citing id.* at 360.

### Court's Decisions on Alkasabi's Substantive Issues

In this appeal, Alkasabi argues that the Bankruptcy Court exceeded its jurisdiction and authority and abused its discretion in enjoining Alkasabi from future suits against entities involved in the bankruptcy and finding Alkasabi in civil contempt for failure to comply with the Court's orders.  He asserts that the orders are void because the Bankruptcy Court lacked jurisdiction to enter them.  The Court disagrees.

Whether a bankruptcy court has jurisdiction is a question of law reviewed *de novo*.  *In re Texas Commercial Energy*, 607 F.3d 153, 157 (5th Cir. 2010); *In re Grand Jury Proceedings*, 115 F.3d 1240. 1243 (5th Cir. 1997).

Bankruptcy jurisdiction, like all federal jurisdiction, must be based on a statute.  *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).  This Court has demonstrated that as a matter of law the Bankruptcy Court had the statutory authority to enjoin Alkasabi from future filings and to issue a civil contempt order under 11 U.S.C. § 105 and the All Writs Act, 28 U.S.C. § 1651(a) where necessary and appropriate to address vexatious conduct. *Terrebonne*, 108 F.3d at 612-13.  The record is replete with instances of Alkasabi's pattern of vexatious, frivolous and harassing issues and appeals in the bankruptcy proceeding and in adversary proceedings and failure to comply with the court's order of sanctions.  The orders are more than supported by the facts

evidenced in the record of repeated abusive litigation practices by Alkasabi in the bankruptcy proceeding.[13]   Moreover, Judge Steen appropriately limited his injunction to future filings relating to this bankruptcy and its appeals and adversary proceedings against parties that were involved in this litigation.   Thus the Court finds Judge Steen's factual findings are not clearly erroneous, nor has Judge Steen abused his discretion in his determinations.   His orders are not void for lack of jurisdiction or lack of authority.

### Res Judicata

Moreover, the Court agrees with Appellees that this appeal is barred by *res judicata*,[14] because Alkasabi challenged the same two

---

[13] Alkasabi conclusorily asserts that he was denied due process.  "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826 (1994).  Again the record demonstrates that Alkasabi was accorded notice and an adequate opportunity to be heard whenever his vexatious conduct was challenged and when the parties moved for sanctions and civil contempt.

[14] After a final judgment on the merits of a prior suit is entered, the parties and those in privity with them may not re-litigate issues that either were or could have been brought in that suit.  *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).  Four elements must be satisfied for a claim to be barred by the doctrine of *res judicata*: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same claim or cause of action must be litigated in both cases.  *Id.*

orders in Civil Action No. 09-04118,[15] which was dismissed on April 13, 2010 by Judge Hoyt (copy filed as #24, Ex. 15) because Alkasabi failed to prosecute that appeal. *Nielsen*, 976 F.2d at 957("dismissal for failure to prosecute bars any further adjudication because it operates as an adjudication on the merits"), *cited for that proposition, In re Pequeno*, 299 Fed. Appx. 372 (5th Cir. Nov. 12, 2008).

Accordingly for these reasons the Court AFFIRMS the Bankruptcy Court's Final Sanction Order and Civil Contempt Order.

**SIGNED** at Houston, Texas, this  31st  day of  March , 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[15] In Alkasabi's response to order to show cause (#8 at p.1 in H-09-4118, he clearly states that H-09-4116 and H-09-4119 "should be administratively joined because they are dealing with the same appealed [*sic*] orders."